*313 OPINION.
MaRqhette:
The pleadings in this case raise two issues, namely, is the petitioner entitled to have its profits tax for 1918 and 1919 computed under section 328 of the Revenue Act of 1918 and, did the respondent err in adjusting the petitioner’s invested capital for the fiscal years involved on account of the 1917 taxes of the partnership of Farnsworth, Hoyt & Co.? If the first issue is resolved in favor of the petitioner, decision on the second one will not be necessary.
The evidence herein establishes that on December 31,1917, the petitioner in exchange for $1,000,000 par value of its preferred stock and notes in the amount of $220,152.68, acquired all of the assets, including good will, of the partnership of Farnsworth, Hoyt & Co., and that the good will so acquired had a fair market value of at least $1,000,000. This good will had been built up by the partnership over a period of about 60 years, but the value thereof did not appear in the partnership assets as shown by its books, and was not included in its invested capital, and because of the provisions of section 331 of the Revenue Act of 1918, it can not be included in the statutory invested capital of the petitioner. We are therefore confronted with the same situation found in Clarence Whitman & Sons, Inc., 11 B. T. A. 1192, and Rothschild Colortype Co., 14 B. T. A. 718, wherein we held that the petitioners were entitled to special assessment. In the Whitman case we said:
These intangible assets which the petitioner had acquired from Whitman gave it a volume of business and a reputation which had been built up over a period of many years. The petitioner was a newly organized corporation with no business and no good will of its own. When it acquired the trade-names, trade-marks and good will of Whitman, it acquired a business with annual sales of over $10,000,000 in each of the several past years. This business was first established by Whitman under his own name in 1874. The *314 testimony is that at the time petitioner took over tliis business, Whitman had built up one of the finest white line goods in the country. The evidence concerning the volume of sales and the profits of the predecessor partnership and predecessor corporation establishes that the business and profits were no temporary matter, but firmly established, and 'this is confirmed in the subsequent operations of the petitioner. It was these intangible assets which were the principal cause of the large income which petitioner enjoyed during the taxable years and on which the deficiencies in question are based. Because of its manner of organization these assets may not be included in the computation of its invested capital. We have held that a taxpayer does not fall within the provisions of sections 327 and 328 merely because assets are used in the business which may not be included in invested capital. Morris & Co., 1 B. T. A. 704. The exclusion must be such as to create an abnormal condition. Where, as here, the asset excluded is the most substantial part of its capital and is the principal contributing factor in the production of taxable income of the petitioner, it is our opinion that such an abnormality exists. Vicose Co., 3 B. T. A. 444; G. M. Standifer Construction Corporation, 4 B. T. A. 525; Pittsburgh & Bessemer Coal Co., 5 B. T. A. 45; Excelsior Motor Manufacturing Co., 5 B. T. A. 582; J. M. & M. S. Browning Co., 6 B. T. A. 914; Cushman Chuck Co., 8 B. T. A. 148.
There can be no doubt that the good will acquired by the petitioner from the partnership gave it a volume of business and a reputation that it otherwise would not have had, and that a material part of its earnings in 1918 and 1919 was due to that good will. We are of opinion that the cases cited are controlling and decisive here, and we accordingly hold that in 1918 and 1919 an abnormal condition existed affecting the petitioner’s income and invested capital, and that it is entitled to the benefits of section 328 of the Revenue Act of 1918.
Reviewed by the Board.

Judgment will be entered under Buie 62 (c).